The State, *ex rel.* Williams, *v.* Edwards.

No. 14,153.

THE STATE, EX REL. WILLIAMS, *v.* EDWARDS.

COUNTY SUPERINTENDENT. — *Election of.*—*Tie Vote.*—*Auditor's Casting Vote.* —*Right of Incumbent to Hold Over.*—*Quo Warranto.*—Township trustees met at the time required by statute to appoint a county superintendent of schools to succeed W., the then incumbent. Several ineffectual votes were taken, and on the last ballot one-half of the trustees voted for E. and the other half voted in blank. A resolution was then offered declaring that E. be appointed. The vote upon the adoption of the resolution was evenly divided for and against it. The county auditor thereupon gave a casting vote in favor of the resolution, and a certificate of election was issued to E. *Quo warranto* by W., claiming that no successor to him has been elected, and that he is entitled to hold over. *Held*, that the election of E. was void, because (1) the trustees, under section 4424, R. S. 1881, must determine, without dictation from the auditor, the manner in which the election of superintendent must be held, and that the action of the auditor, in assuming to give a casting vote upon the adoption of the resolution, was unwarranted dictation; (2) under such section 4424 the vote upon the resolution proposed did not constitute a tie authorizing the auditor to give the casting vote, and there could be no election under such resolution unless, a quorum of all the trustees being present, a majority of such trustees vote therefor.

From the Blackford Circuit Court.

*H. Brownlee* and *W. H. Carroll*, for appellant.

*J. Cantwell* and *S. W. Cantwell*, for appellee.

HOWK, J.—In this case errors are assigned here by plaintiff's relator, Williams, which call in question (1) the overruling of his several demurrers to the first, second and third paragraphs, respectively, of defendant's answer herein, and (2) the sustaining of defendant's demurrer to the relator's reply to such paragraphs of answer.

These errors we will consider in the order of their statement, and decide the questions thereby presented.

On the 30th day of June, 1887, plaintiff's relator filed in the court below an information, in the nature of a *quo warranto* proceeding, wherein he averred that, on the first Mon-

day of June, 1885, at a meeting of the trustees of the several townships of Blackford county, in this State, then held at the court-house of such county, in Hartford City, for the purpose of electing a county superintendent for Blackford county for the two years then next ensuing, the relator, Williams, was by said trustees elected and declared to be the county superintendent within and for such county of Blackford; whereby such relator became and was entitled to perform all the duties of such office for the two years then next ensuing, and until his successor should be chosen and qualified; that relator gave such bond as was required to be given, and took the oath of his office, and entered upon and still continued in the discharge of the duties of his office; that, again, on the first Monday of June, 1887, the trustees of said several townships met for the purpose of electing a successor to the relator as such county superintendent; but that such trustees wholly failed to elect any one to succeed relator, and, separating without performing such duty, they had not at any time since elected a successor to the relator in such office; that at such meeting in June, 1887, no votes were so cast as to make a tie vote between two candidates for such office, when the auditor of such county, by his vote, might have decided the election; but that there was a total failure to elect, or to declare any one elected, as the relator's successor; and that the relator was still a resident of Blackford county, and was, and had been since his election as aforesaid, eligible to hold and exercise the functions of the aforesaid office.

And the relator further averred, that since the first Monday of June, 1887, defendant, Chauncey E. Edwards, falsely pretending that at such meeting of said trustees in June, 1887, he was elected to such office of county superintendent, had filed his bond as such, which was approved by the county auditor, had taken the official oath, and had obtruded himself into and was usurping the office aforesaid, by giving out that he was the duly elected and qualified county superintendent for Blackford county, and by examining applicants as to their

qualifications to teach in the common schools of such county, and by issuing, as such pretended county superintendent, certificates to such applicants that they had been duly examined by him, and proved qualified, etc. ; that defendant, Edwards, was not entitled to perform the functions or duties of such office ; but that, for the want and in the absence of any such election, the relator alone was entitled to perform such duties. Wherefore, etc.

Defendant answered in four paragraphs, of which the fourth and last paragraph was a general denial of the material allegations in the relator's information. Each of the first three paragraphs of answer stated special or affirmative matters as a defence ; and to each of these paragraphs the relator's demurrer, for the alleged insufficiency of the facts therein to constitute a defence, was overruled by the court below.

These rulings are assigned here by plaintiff's relator as the first errors of which he complains.

In the first paragraph of his answer, defendant alleged that on the first Monday of June, 1887, Blackford county, in this State, was divided into four civil townships, named respectively as follows, to wit : Licking, Jackson, Harrison and Washington townships, in each of which townships there was at that time a duly elected, qualified and acting trustee ; that, on the day last mentioned, all of such trustees met in the auditor's office of such county, in the presence of the county auditor, for the purpose of electing a county superintendent of schools as required by law ; that thereupon the following proceedings were had and entered of record by the county auditor at the time : Here a transcript of such record, duly certified by such auditor, is inserted in the body of such paragraph of answer, which record shows that all the trustees of the several townships of such county met at the time and place and for the purpose stated, and proceeded to vote by ballot, and so voted fourteen different times, for the purpose of electing or appointing a county superintendent, setting out the result of the ballot each time, giving the names of the

persons voted for and the vote each received. The fourteenth and last ballot resulted in two votes for Blank and two votes for Edwards. Immediately following the last ballot, these proceedings are shown by such record, to wit:

"*Resolved*, That Chauncey E. Edwards be and is hereby appointed county superintendent of the county of Blackford for the period of two years, ending upon the first Monday of June, 1889, or until his successor is elected and qualified."

Then follows the vote upon the adoption of the resolution quoted, showing that of the township trustees two voted for and two against the adoption thereof; and that then the county auditor, *ex officio* clerk of such election, assuming that this was the tie vote he was authorized to give the casting vote upon, voted for the adoption of such resolution. The two trustees who voted against the resolution then made and signed the following protest, to wit: "We do hereby enter our protest against the above vote." It was also shown by such record that, on the same day, the same trustees entered a more elaborate protest against the "so-called appointment" of Edwards, wherein they "aver that there was no election, no ballot cast, no nomination of candidates," and they desired that such protest be spread upon the minutes of such meeting, that such proceedings were had without their knowledge or consent.

Defendant then averred that he was the person referred to in the resolution above quoted, and for whom two votes were cast on said fourteenth ballot; that, at said meeting, defendant was duly elected and appointed county superintendent for the two years then next ensuing, as was shown by the aforesaid record; that, at the time of his election to such office, defendant was and had been since and then was a citizen and resident voter of Blackford county, and eligible to such office; that, after his said election, to wit, on June 8th, 1887, defendant had taken and subscribed his oath of office, and had executed his official bond, with sureties approved by the county auditor, payable to the State and conditioned ac-

cording to law; that defendant had complied with the requirements of the statute governing his said office, had received from the county auditor a certificate of his said election, had entered upon the discharge of the duties of his said office, and was then holding and exercising the functions of such office by virtue of his said appointment thereto. Wherefore, etc.

In the second and third paragraphs of his answer, defendant has not asserted any other or different title to such office of county superintendent than the title he has so fully and elaborately stated and set forth in the first paragraph of such answer herein. Without attempting, therefore, even to summarize the facts averred in either the second or third paragraphs of such answer, we may say generally, in relation thereto, that if the facts stated in the first paragraph of such answer clearly show, as we think they do, that defendant was not legally elected to the office of county superintendent on the first Monday of June, 1887, or at any subsequent time, then it is certain that he has failed to state, in any one of the special paragraphs of his answer, a valid defence to the relator's cause of action, and that the demurrers to each and all of such paragraphs ought to have been sustained.

The error in the proceedings of the township trustees, under which defendant claimed title to the office of county superintendent, grew out of the unwarranted assumption of the county auditor, *ex officio* clerk of such election, that he was authorized by the statute to give a casting vote upon the adoption of a resolution changing the mode of procedure from an election by ballot, and declaring the election of defendant to the office by resolution adopted by a yea and nay vote. This error was fundamental, and, as we think, vitiated and avoided the attempted election of defendant as county superintendent under and by virtue of such resolution. In *State, ex rel.,* v. *Kilroy,* 86 Ind. 118, it was substantially held by this court, in construing the provisions of section 4424, R. S. 1881, in relation to the appointment of a county

superintendent of common schools, that the county auditor, although clerk of the election by the township trustees, and required to keep a record of the election in a book for that purpose, has no power to dictate to such trustees the manner in which they shall vote for the election or appointment of such superintendent, whether *viva voce* or by ballot, or by the adoption of a resolution, by a yea and nay vote, declaring that some person named therein be and is thereby elected or appointed as such superintendent; and that the trustees must determine, without dictation from such auditor or clerk, the manner in which the election must be held or the appointment made. We need not argue for the purpose of showing that, in the case under consideration, the action of the county auditor, as shown by defendant's answer, in assuming to give a casting vote upon the adoption of the resolution quoted, was dictation pure and simple on his part to the township trustees, or fully one-half of their number, that the mode of their procedure in the election or appointment of the county superintendent must be changed from a vote by ballot to a yea or nay vote upon the adoption of such resolution declaring that defendant herein was thereby appointed as such superintendent.

We are of opinion, also, that the attempted election or appointment of defendant to the office of county superintendent, by the adoption of the resolution above quoted upon the casting vote of the auditor or clerk of such election, was void and of no effect for another and, perhaps, better reason.

Our statute on the subject of the election or appointment of such superintendent by the township trustees of the several townships of the county, it is true, provides that "the county auditor shall be clerk of such election in all cases, and give the casting vote in case of a tie," etc. Section 4424, *supra*, in force since March 8th, 1873.

It will be readily seen from the statutory provision last quoted, that the county auditor as clerk of such election has power to give the casting vote only in case of a tie at such

election. There can be no tie of votes, within the meaning of this statutory provision, where the one-half of the qualified voters cast their votes for one person or candidate, and the residue of such voters cast their votes in blank, or for a fictitious person, or against the adoption of a resolution declaring the election, or appointment of the person named therein to the office. In other words, where a resolution is presented at such an election declaring that the one person named therein is appointed thereby to the office of county superintendent, such resolution can not be adopted unless a majority of all the trustees of the several civil townships in the county, present and constituting at least a quorum of all such trustees, vote for the adoption thereof; and the fact shown by defendant's answer in the case in hand, that the one-half only of all the trustees voted for, while the other half voted against, the adoption of such resolution, does not make the "case of a tie," wherein, under the statute, the county auditor, as clerk of such election, had power to "give the casting vote," either for or against the adoption of the resolution.

The case contemplated by the statute, in which the county auditor as such clerk may "give the casting vote," is a case wherein the votes of all the township trustees present, and constituting at least a quorum of all such trustees, are equally divided between two persons or candidates, and where such "casting vote," no matter how it may be cast, will result in the election to the office of one or the other of such persons or candidates; and that certainly was not the case in which the auditor of Blackford county assumed the power to give the casting vote in favor of the election of defendant, as shown by his special answers herein. *McGee* v. *State, ex rel.*, 103 Ind. 444; *State, ex rel.*, v. *Porter*, 113 Ind. 79.

Our conclusion is that the court below clearly erred in overruling relator's demurrers to each of the first, second and third paragraphs of defendant's answer to the information herein.

This conclusion renders it unnecessary for us to consider and decide the question presented by the alleged error of the court below in sustaining defendant's demurrer to the reply of relator to the special paragraphs of answer herein.   We may properly say, however, that it was error to sustain the demurrer to such reply, for the paragraphs of answer to which the reply was filed were clearly bad, as we have already decided.   This being so, whether the reply was good or bad, the demurrer thereto ought to have been carried back and been sustained by the court to such special paragraphs of answer; for it is well settled by our decisions that even a bad reply is a good enough reply to bad paragraphs of answer. *Ætna Ins. Co.* v. *Baker,* 71 Ind. 102; *State, ex rel.,* v. *Porter,* 89 Ind. 260;   *Clawson* v. *Chicago, etc., R. W. Co.,* 95 Ind. 152.

The judgment is reversed, with costs, and the cause is remanded, with instructions to sustain the demurrers to each of the first three paragraphs of answer, and for further proceedings not inconsistent with this opinion.

Filed April 12, 1888; petition for a rehearing overruled May 18, 1888.